Terry Thomas **DUPREE;** Jerry Dupree, **Plaintiffs–Appellants,**

v.

**UNITED PARCEL SERVICE, INC.,** **Defendant–Appellee.**

No. 90–6362.

United States Court of Appeals, Tenth Circuit.

Feb. 4, 1992.

Polly Murphy, Ardmore, Okl., for plaintiffs-appellants.

William D. Curlee of Lytle Soule & Curlee, Oklahoma City, Okl., for defendant-appellee.

Before LOGAN and BARRETT, Circuit Judges, and KELLY,* District Judge.

LOGAN, Circuit Judge.

Plaintiffs-appellants Jerry and Terry Thomas Dupree appeal from orders of the district court dismissing claims they filed against defendant-appellee United Parcel Service, Inc. (UPS).[1] We affirm.[2]

The Duprees are former employees of UPS. They brought this action following their termination from the company in 1987. They were not married during their tenure with UPS. Each started with the company as an hourly union employee. Terry Thomas Dupree began working for the company in 1981. Jerry Dupree began his employment in 1978. As union members, they could be fired only "for cause." They were later promoted to management, which did not provide union protection. Both allege they accepted the management position upon the representation that they would retain job security.

In August 1986, Terry Dupree began working as a supervisor. She alleges that following her promotion, Pepper Simmons, a senior manager with UPS, began sexually harassing her. Ms. Dupree alleges, among other things, that Simmons followed her, called her names, made sexually oriented comments and gestures, and, on one occasion, made a sexually harassing phone call. The Duprees contend UPS management was aware of this behavior and did nothing to stop it.

In the spring of 1987, Pepper Simmons allegedly learned Terry Dupree was dating

---

* Honorable Patrick F. Kelly, District Judge, United States District Court for the District of Kansas, sitting by designation.

1. UPS has filed a motion to dismiss a portion of the Duprees' appeal for failure to comply with Fed.R.App.P. 3(c). The notice was filed after the district court's order resolving the last claim before the court. That order references the earlier dismissal of the other cause of action. The record shows that the Duprees clearly intended to appeal both of the district court's orders. "[W]e construe notices of appeal liberally in order to avoid denying review of issues that the parties clearly intended to appeal." *Averitt v. Southland Motor Inn*, 720 F.2d 1178,

1180 (10th Cir.1983); *see also Foman v. Davis*, 371 U.S. 178, 180–81, 83 S.Ct. 227, 229–30, 9 L.Ed.2d 222 (1962) (where parties' intent to appeal two orders was "manifest," notice of appeal was adequate). The motion to dismiss is, therefore, denied. In light of this disposition, the Duprees' Motion For Clerk To Correct Docketing Statement is moot.

2. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

Jerry Dupree, who was a supervisor at that time. According to the Duprees, Simmons vowed to "get his job." In May 1987, UPS terminated Jerry Dupree for violating the UPS fraternization policy. The Duprees contend it was their understanding that to the extent such a policy existed, it only regulated conduct between management and hourly employees, rather than between two supervisors.

In July 1987, Terry Dupree filed a written complaint regarding the sexually harassing phone call from Simmons. UPS did not take any action on the complaint until September 1987. Simmons was not disciplined. After her July complaint, Terry Dupree's supervisors began "writing her up" for infractions of company policy. In October 1987, UPS management asked Terry Dupree to resign and offered her $12,000. When she refused, she was fired.

The Duprees filed this lawsuit on March 19, 1990. Their two causes of action are based on tortious breach of contract pursuant to *Burk v. K–Mart Corp.*, 770 P.2d 24 (Okla.1989), and an alternative claim for breach of implied contract under *Hinson v. Cameron*, 742 P.2d 549 (Okla.1987). The district court dismissed the *Burk* claim because the statute of limitations had run. In a later order, the court granted summary judgment to UPS on the implied contract claim. The Duprees appeal these rulings.

### I

■ Under certain narrowly defined circumstances, Oklahoma recognizes a cause of action arising from the termination of an at-will employee. *Burk*, 770 P.2d at 28. Terminated at-will employees may maintain a cause of action against an employer in "cases in which the discharge is contrary to a clear mandate of public policy as articulated by constitutional, statutory or decisional law." *Id.*

■ Terry Dupree argues she was discharged in retaliation for objecting to the sexually hostile environment which Pepper Simmons created. As a corollary, the Duprees assert Jerry Dupree was discharged because Simmons was angry that he was dating Terry Dupree. The Duprees maintain that the firings are contrary to state and federal sex discrimination laws and, therefore, fall within the class of cases identified in *Burk*.

The district court dismissed this claim pursuant to Fed.R.Civ.P. 12(b)(6). We must uphold this dismissal if it appears the Duprees "can prove no set of facts in support of [this] claim[ ] that would entitle [them] to relief." *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence, Kan.*, 927 F.2d 1111, 1115 (10th Cir.1991). We agree with the district court that regardless of whether the Duprees are correct in asserting this as a *Burk* claim, the cause of action must be dismissed because it was not filed within the appropriate statute of limitations.[3]

The Duprees contend a three-year limitation period should apply to the *Burk* claim. Oklahoma statute allows three years to file suit in "action[s] upon a contract express or implied not in writing; [or] an action upon a liability created by statute other than a forfeiture or penalty." Okla.Stat. Ann. tit. 12 § 95. The Duprees maintain that because their *Burk* claim is premised on various civil rights statutes, and is based on an employment contract, the three-year limitation should apply. We disagree.

In *Burk*, the Oklahoma Supreme Court acknowledged this new cause of action as one proceeding in tort. 770 P.2d at 28. A two-year statute of limitations governs tort claims in Oklahoma. *See* Okla.Stat.Ann. tit. 12 § 95. This section states, in part: "Within two (2) years: An action ... for injury to the rights of another, not arising on contract...." We agree with the district court that this cause of action addresses recovery for injury to the rights of others. For that reason, it falls under the two-year statute. *See id.* The claim is not,

---

3. In light of our disposition, the Duprees' Motion For Certification of Questions of Law is denied.

as the Duprees suggest, based on a statute. The cause of action has its genesis in the *Burk* decision. Thus, we uphold the district court's ruling on this claim.

## II

■ Although the Duprees have admitted they were at-will employees, *see* Appellants' Opening Brief at 27, their second cause of action is premised on an argument that they were not. The Duprees contend that certain representations were made to them, both orally and in policy manuals, which created an implied contract and voided their at-will status. They argue that UPS breached this implied contract when it terminated them. Our review is de novo, applying the same standards as the district court under Fed.R.Civ.P. 56(c). "Summary judgment is appropriate when there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Russillo v. Scarborough*, 935 F.2d 1167, 1170 (10th Cir.1991).

■ In Oklahoma, at-will employment may, under some circumstances, be converted to one of tenured job security by implied contract. *Hinson v. Cameron*, 742 P.2d at 554–55. In *Hinson*, the court stated,

> Factors which have been isolated as critical to evaluate whether an implied contract right to job security exists are: (a) evidence of some 'separate consideration' beyond the employee's services to support the implied term, (b) longevity of employment, (c) employer handbooks and policy manuals, (d) detrimental reliance on oral assurances, pre-employment interviews, company policy and past practices, and (e) promotions and commendations.

*Id.*

■ An inquiry into whether an implied contract exists is normally factual. *Williams v. Maremont Corp.*, 875 F.2d 1476, 1481 (10th Cir.1989). If the alleged promises are nothing more than vague assurances, however, the issue can be decided as a matter of law. *See generally Krause v. Dresser Indus., Inc.*, 910 F.2d 674, 678 (10th Cir.1990) (in order to create implied contract, promises must be definite) (citing *Williams*, 875 F.2d at 1481); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986) (inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury").

Here, the district court determined that the evidence which the Duprees submitted was insufficient to form an implied contract. Specifically, the court held that the alleged oral statements and policy manual provisions were simply too vague to constitute enforceable promises of job security. After reviewing the record in the light most favorable to the Duprees, we agree.

The Duprees rely on the UPS Policy Manuals to support this argument. They contend certain provisions in the manuals constitute enforceable promises. In particular, they cite certain provisions relating to employee treatment. The current UPS Policy Book states, "We Treat Our People Fairly and Without Favoritism." Appellants' Opening Brief Doc. A–5 at 33. Another edition states the objective of UPS is "[t]o keep the ownership and control of our company in the hands of its managers and supervisors—to build an organization of people who think and act as partners rather than as 'hired hands.' " *Id.* Doc. A–6 at vi. The statements which the Duprees have identified are not specific. They do not create an implied contract. *See Avey v. Hillcrest Medical Ctr.*, 815 P.2d 1215, 1217 (Okla.Ct.App.1991) (summary judgment appropriate on *Hinson* claim where there were no assurances of job security and employer disclaimed intent to form contract), *cert. denied*, (Sept. 11, 1991).

Likewise, the Duprees have not identified any specific oral promises which support the existence of an implied contract under *Hinson*. In *Krause*, this court found sufficient evidence of implied contract where the employer made express representations concerning future job security. 910 F.2d at 678–79. We noted that the employee transferred to a different city in reliance on the employer's statement that "any further reductions in force would be accomplished by

first terminating employees with less seniority." *Id.* at 679.

The Duprees have not made similar claims. The oral assurances they have identified, like the written ones, are simply too vague to create an implied contract. Specifically, the Duprees maintain it was their understanding they would have employment with UPS as long as they wanted. They argue they were told they would receive better benefits and salary if they became supervisors. Further, Terry Dupree maintains UPS's practice of making stock awards at the end of one year is evidence of implied contract.[4] None of these general statements rise to the level of the assurances made in *Krause.* The Duprees did not meet the high threshold for invoking the implied contract doctrine. Their claims are insufficient as a matter of law. Thus, we affirm the district court's grant of summary judgment.

UPS's Motion to Partially Dismiss Appeal is denied, thus rendering the Duprees' Motion For Clerk To Correct Docketing Statement moot. The Motion for Certification of Questions of Law is denied. The judgments of the United States District Court for the Western District of Oklahoma are AFFIRMED.

---

**4.** To the extent the Duprees assert the stock award as a separate claim, it is barred because it was not identified as such in their complaint. *See* Appellants' App. Tab 1.