**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 15 2001**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

CARMELITA T. MUNIZ,

          Plaintiff-Appellant,

v.

CHRISTINE HIGHNAM, individually
and as Director of Boulder County
Department of Social Services;
BOULDER COUNTY DEPARTMENT
OF SOCIAL SERVICES,

          Defendants-Appellees.

No. 00-1325
(D.C. No. 97-S-2092)
(D. Colo.)

---

**ORDER AND JUDGMENT**   *

---

Before **HENRY** , **BRISCOE** , and **MURPHY** , Circuit Judges.

Plaintiff Carmelita Muniz was the Human Resources Manager for the

Boulder County Department of Social Services until her termination in July 1996.

She brought this action against defendants asserting claims for discrimination and

retaliation under Title VII and 42 U.S.C. § 1981, for violation of her First, Fifth,

---

\*      This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

and Fourteenth Amendment rights, and for intentional infliction of emotional distress.  She appeals the district court's order of September 2, 1998, dismissing her due process claim and the court's order of July 18, 2000, granting summary judgment to defendants on her Title VII and § 1981 claims.  Plaintiff does not appeal the court's disposition of any of her other claims.  We exercise jurisdiction under 28 U.S.C. § 1291 and affirm. [1]

At the outset, we must address defendants' contention that we do not have jurisdiction to review the disposition of plaintiff's due process claim because plaintiff did not designate the court's order of September 2, 1998, in her notice of appeal.  The notice stated only that plaintiff was appealing from the judgment and order of dismissal entered July 18, 2000.

"Our jurisdiction is limited to the judgment, order, or part thereof designated in the notice of appeal, but the notice of appeal is not to be given a wooden interpretation."  *Perington Wholesale, Inc. v. Burger King Corp.*, 631 F.2d 1369, 1379 (10th Cir. 1980) (on rehearing) (citation omitted).  "[W]e construe notices of appeal liberally in order to avoid denying review of issues the parties clearly intended to appeal."  *Dupree v. United Parcel Serv., Inc.*, 956 F.2d

_____

[1]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

219, 220 n.1 (10th Cir. 1992) (quotation omitted). Thus, we have permitted a notice of appeal that names only the final judgment to support review of earlier interlocutory orders that merge in the final judgment "under the general rule that appeal from a final judgment supports review of all interlocutory orders." *Cole v Ruidoso Mun. Sch.*, 43 F.3d 1373, 1382 n.7 (10th Cir. 1994) (quotation omitted). Plaintiff clearly intended to appeal the district court's dismissal of her due process claim, and we conclude that we have jurisdiction to review that dismissal even though plaintiff did not specifically designate the dismissal order in the notice of appeal.

The facts of this case are well known to the parties, and we will not repeat them here except as necessary to our analysis. The district court dismissed plaintiff's due process claim against defendant Christine Highnam in her official capacity as the Director of the Department of Social Services on the basis of Eleventh Amendment immunity. The court also dismissed plaintiff's claim against Ms. Highnam in her personal capacity on the basis of qualified immunity. Plaintiff challenges only the latter dismissal.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "In

analyzing qualified immunity claims, we first ask if a plaintiff has asserted the violation of a constitutional right at all, and then assess whether that right was clearly established at the time of a defendant's actions." *Clanton v. Cooper*, 129 F.3d 1147, 1153 (10th Cir. 1997).

The district court concluded that plaintiff's claim failed on the first prong of the analysis, because she failed to assert the violation of a constitutional right. Defendant Highnam placed plaintiff on administrative leave on July 5, 1996, and told her she was considering firing plaintiff. On July 8, Ms. Highnam wrote plaintiff a letter informing her that a pre-disciplinary conference was scheduled for July 12 to discuss the facts that might lead to termination. In the letter, Ms. Highnam informed plaintiff of the information she currently had before her and of the reasons she was considering firing plaintiff. Plaintiff appeared at the conference with counsel. She objected to Ms. Highnam conducting the conference, on the ground that she was not impartial, and to the presence of a County Attorney who had been involved in the circumstances leading up to the disciplinary proceedings. The conference went forward, nonetheless, and plaintiff was given an opportunity to defend her actions. On July 17, Ms. Highnam sent a letter to plaintiff and her counsel informing them of her decision to terminate plaintiff effective July 19, and setting forth her reasons for doing so. Plaintiff subsequently appealed her termination administratively and received a

post-termination hearing before an administrative law judge at which she had an opportunity to subpoena witnesses, present her own testimony, and present argument in support of her position. The administrative law judge affirmed the termination decision.

The district court determined that plaintiff could not assert a due process violation because she had received all the process she was due. *See, e.g., West v. Grand County*, 967 F.2d 362, 367-70 (10th Cir. 1992) (discussing pre-termination and post-termination process due a public employee). Accordingly, the court concluded that defendant Highnam was entitled to qualified immunity. Based on our own careful review, we affirm the district court's determination that plaintiff received all the process to which she was entitled and, therefore, failed to establish that defendant Highnam violated her due process rights.

We turn, then, to plaintiff's Title VII and § 1981 claims for discrimination and retaliation. Plaintiff contended that she was terminated because she was Hispanic and because she spoke out against discrimination against other minority employees within the Department of Social Services. Defendants contended that plaintiff was neither discriminated against nor retaliated against, but was terminated for her exceedingly poor judgment and negligence in connection with the hiring of several employees who had criminal records.

Plaintiff relied upon indirect evidence to support her claims of discrimination. Accordingly, the district court analyzed the case under the burden-shifting approach established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). This analytical framework applied equally to plaintiff's Title VII and § 1981 claims. *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000).

> In order to survive summary judgment, a plaintiff relying on *McDonnell Douglas* bears an initial burden of establishing a prima facie case intended to eliminate the most common nondiscriminatory reasons that might account for the adverse employment action. Once the plaintiff has established a prima facie case, the burden then shift[s] to the employer to articulate some legitimate, nondiscriminatory reason for taking an adverse employment action against the plaintiff. If the defendant successfully meets its burden of production, the burden shifts back to the plaintiff to put forth evidence sufficient to allow a jury to find that the defendant's reason is pretextual, *e.g.*, that it is unworthy of belief.

*English v. Colo. Dep't of Corr.*, 248 F.3d 1002, 1008 (10th Cir. 2001) (quotation and citations omitted; alteration in original).

In moving for summary judgment, defendants assumed for the sake of argument that plaintiff could establish her prima facie case. They then came forward with a legitimate, nondiscriminatory reason for terminating plaintiff. In her letter of July 17, 1996, setting forth her decision to terminate plaintiff, defendant Highnam stated that she made the decision "after much deliberation, after considering Ms. Muniz' ten year history with the Department, and after

consideration of the alternatives." R. Vol. I, Doc. 46, Ex. 3 at 2. Ms. Highnam

further explained:

> Unfortunately, the recent incidents described in my July 8, 1996
> letter . . . have shattered my trust in Ms. Muniz' judgment and
> willingness to provide me with information essential to make human
> resources decision[s]. In these circumstances, progressive discipline
> is not "practicable," and the Merit System permits immediate
> dismissal, due to the seriousness of the offense.
>
> The bases for terminating Ms. Muniz, as described in my
> July 8, 1996 letter, are her repeated failures to provide me critical
> information concerning employees. While Ms. Muniz attempts to
> portray the issue as a concern for routine police records checks, the
> issues here were not routine, and a Human Resources Manager
> should have brought these matters to my attention. Ms. Muniz
> admits that she was informed by Veda English and Curt Butler on
> March 8, 1996 that Ms. English, a social worker, had been convicted
> of assault on a developmentally disabled patient. She did not
> disclose this critically important information to me for over two
> months, and instructed Mr. Butler not to disclose this information to
> his manager. Similarly, with Ms. Guidry, Ms. Muniz knew that
> Ms. Guidry had been fired from her job with the Denver Police
> Department, and convicted of crimes relating to misuse and sale of
> government information. Ms. Muniz either deliberately withheld this
> information from me, or showed extremely poor judgment in failing
> to provide this information to me prior to Ms. Guidry's hiring, and
> for almost two months thereafter. Ms. Muniz also failed to provide
> me accurate information about the time required to obtain criminal
> records checks on employees. These are such extreme situations that
> my trust in her ability to act as Human Resources Manager for the
> Department has been destroyed. Ms. Muniz' withholding of
> information may have jeopardized the safety of Department clients,
> exposed the Department to liability, and jeopardized the security of
> the Department records.

*Id.*

Once defendants articulated this legitimate, nondiscriminatory reason for terminating plaintiff, the burden shifted to plaintiff to raise a material issue of fact as to whether the reason articulated by defendants was pretextual.

A plaintiff typically makes a showing of pretext in one of three ways:

> (1) with evidence that the defendant's stated reason for the adverse employment action was false; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances; or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff. A plaintiff who wishes to show that the company acted contrary to an unwritten policy or to company practice often does so by providing evidence that he was treated differently from other similarly-situated employees who violated work rules of comparable seriousness.

*English*, 248 F.3d at 1009 (quotation omitted).

Plaintiff relied on a variety of factors to establish pretext. First, she argued that she did not really violate a work rule, because the policy on criminal background checks (which she developed and implemented) did not have a required time frame for conducting the background checks, the policy did not require her involvement until after the Department received the results of the background check from the police, and her assistant was the one responsible for sending the routine requests for background checks to the police and she fell a month behind in doing so without plaintiff's knowledge. Plaintiff also presented

a different version of what was said during her meeting with Mr. Butler and Ms. English concerning Ms. English's conviction. Plaintiff tried to justify her handling of the Guidry matter by pointing out that she did not hire Ms. Guidry, her assistant did; Ms. Guidry's name came from the Merit System register; and the criminal case against Ms. Guidry was dismissed after she complied with the deferred judgment and sentence, which was before she was hired by the Department.

Plaintiff also presented evidence that up until shortly before he was terminated, she had received above-standard and outstanding performance evaluations, and in February 1996 she was reappointed to the Benefits Advisory Board and she was awarded a longevity recognition award by defendant Highnam. Plaintiff also relied on the fact that in ruling on her uncontested application for unemployment benefits, the Colorado Department of Labor and Employment found that she did not commit any volitional act that could be construed as the cause for her separation. Plaintiff also argued that similarly situated employees were not disciplined as harshly for what she believed to be similar infractions, and she submitted a report by the Colorado Institute for Hispanic Education & Economic Development indicating that racism existed in the workplace at the Department. Finally, plaintiff presented affidavits from four other Department employees expressing their opinions that racism existed within the Department.

The district court concluded, for various reasons, that none of the evidence presented by plaintiff raised a material fact as to pretext. We have carefully reviewed the entire record in this case and, based upon our review, we affirm the district court's determination that plaintiff did not raise a genuine issue of material fact as to pretext. Accordingly, the district court properly entered summary judgment against plaintiff on her Title VII and § 1981 claims of discriminatory discharge.

Plaintiff also asserted Title VII and § 1981 claims for retaliatory discharge. She alleged that she was retaliated against for continually speaking out against discrimination she witnessed against other employees in the Department and, in particular, against Susie Goodloe, the only black supervisor in the Department.

"To establish a prima facie case of retaliation, [a plaintiff] must establish that: (1) he engaged in protected opposition to discrimination; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action." *O'Neal v. Ferguson Constr. Co* ., 237 F.3d 1248, 1252 (10th Cir. 2001). "These elements are identical for § 1981 and Title VII actions." *Roberts v. Roadway Express, Inc.* , 149 F.3d 1098, 1103 n.1 (10th Cir. 1998).

"As with claims for discriminatory discharge, if the plaintiff establishes a prima facie case of retaliation, the burden shifts to the employer to articulate a

nondiscriminatory reason for the adverse employment action. If the employer satisfies this burden of production, then, in order to prevail on her retaliation claim, the plaintiff must prove that the employer's articulated reason for the adverse action is pretextual, i.e. unworthy of belief." *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1264 (10th Cir. 2001) (quotation omitted).

The district court concluded that plaintiff failed to establish her prima facie case because she did not make the requisite showing of a causal connection between her termination and her alleged protected activity. Our review of the record supports the district court's determination. Moreover, even if we were to assume that plaintiff established her prima facie case, her claim would fail because she failed to raise a triable issue of fact with regard to pretext, as discussed above. Therefore, we conclude the district court properly entered summary judgment against plaintiff on her Title VII and § 1981 claims of retaliatory discharge.

The judgment of the district court is AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

-11-